LAW OFFICES OF

# AMBROSE WOTORSON

A PROFESSIONAL CORPORATION
SUITE 1811
26 COURT STREET
BROOKLYN, N.Y. 11242
TELEPHONE: 718 797-4861
FACSIMILE: 718 797-4863

**<u>VIA ECF</u>**

September 19, 2010

Honorable Judge Mauskopf, U.S.D.J.
Eastern District of New York
United States District Court
225 Cadman Plaza East
Brooklyn, New York 10007

Re:  *<u>Blythe v. City of New York, et. al.</u>*
08-Civ-2843 (RRM) (CLP)

Dear Honorable Judge Mauskopf:

This firm represents the plaintiff in the above styled matter, and we write in response to defendant's request for a pre-motion conference.

Defendants claim that there are no facts from which reasonable inferences can be drawn that disciplinary charges against plaintiff were partly the result of retaliatory animus. Defendants are wrong. Plaintiff, who is African-American and holds a Master's Degree in Common Branches and Elementary School Education, had received stellar performance reviews for approximately 20 previous years. Friction developed between plaintiff and Espinal-Pacheco, who is not African-American, almost immediately after she became plaintiff's Principal. This culminated in plaintiff's June 2006 political campaign for Union Chapter Leader position. During that campaign, plaintiff spoke out about her perceptions that Espinal-Pacheco treated African American parents and students differently, and often to the their detriment. Thereafter, plaintiff received a spate of "warnings" and "reprimands" which culminated in misconduct charges being filed against plaintiff. The fact that plaintiff had never been subjected any disciplinary measures in the 20 plus years that plaintiff had been teaching prior to Espinal-Pacheco's arrival, coupled with the temporal proximity between plaintiff's speaking out and the beginning of written criticism of plaintiff's performance raises inferences of retaliatory intent.

Moreover, the spate of warnings and reprimands against plaintiff were racially disparate, as other teachers whose performance and/or comportment where far worse than plaintiff's were not subjected to the same level of scrutiny or disciplinary measures that plaintiff was. As an example, plaintiff was reprimanded for leaving a class unattended, when in fact, the class was assigned to a non-African-American teacher who had essentially abandoned her own the class. That teacher was not reprimanded or disciplined in any regard. Separately, plaintiff was disciplined for alleged time and leave problems after she was unforeseeably hospitalized. Similarly situated non-black teachers were not so disciplined for similar conduct.

1

Defendants next argue, without reference to any facts adduced in the disciplinary hearing, deposition transcripts or documents, that plaintiff *did not* even engage in any protected activities. Contrary to defendants' arguments, there is record evidence that plaintiff spoke out about her Principal's mismanagement when she ran for elected union office. While defendants claim that plaintiff's <u>Monell</u> claims must fail, they did not explain why. In any event, there can be little doubt, that the City of New York had a city-wide custom, practice and policy of sending teachers to stigmatizing and humiliating "rubber rooms," pending the resolution of disciplinary charges. Indeed, teachers in all of New York City's boroughs have been subjected to this practice. The practice was recently discontinued precisely because of its humiliating and stigmatizing nature.

Defendants, who are accused of conspiring to retaliate against plaintiff, of discriminating against her because of her race and ultimately causing her to be subjected to a humiliating arrest and strip search when she was accused of a false allegation of corporal punishment, argue that the claims should be dismissed against the individual defendants because they are qualifiedly immune. However, defendants have not explained how or why the individual defendants are qualifiedly immune.

Defendants also argue that, "there is not one iota of evidence" supporting plaintiff's Section 1985 conspiracy claims. Defendants are wrong.  This is a case in which the defendants -- corporate and individual – acted in concert to retaliate against plaintiff, to bring disciplinary charges against her, and ultimately to have her arrested and strip-searched.  The conspirators included employees of the Board of Education, a separate corporate entity, the New York City Police Department and at least one private individual. Thus, contrary to defendants' arguments, the intra-corporate conspiracy doctrine is inapposite because the alleged conspirators *are not* drawn from a "single corporate entity."

While plaintiff does not contest defendants' right to file a Motion For Summary Judgment, it is respectfully submitted they should be discouraged from doing so in light of the existence of disputed issues of fact.

Respectfully Submitted,
 /s/
Ambrose W. Wotorson, Jr. (AWW-2412)

cc:      Donna Canfield, ACC